On today's docket is clause number 17-20420, United States of America v. Henry Lee London, Jr. Are the parties ready to proceed? Right. Appellant, you may proceed. May it please the court. Joshua Lake for the appellant, Henry London, Jr. The judgment in this case should be reversed and remanded for a new trial on counts 2 through 4 because the government is not able to prove beyond a reasonable doubt that its constitutional error was harmless. At trial, the government admitted three affidavits and one letter, all prepared by an out-of-court witness in anticipation of trial. By failing to brief the issue, the government has waived any argument that admission of those documents was not error. The government instead asks this court to look at the other evidence, the admissible evidence, and from it to find that there was sufficient evidence to convict. But this court rejected that line of reasoning in Alvarado-Valdez, holding instead that when the government admits evidence in violation of the confrontation clause, the test then is whether on appeal the government can prove beyond a reasonable doubt that the error was harmless. That is, the government must prove that there's no reasonable possibility that the error contributed to the conviction. The government cannot meet that burden here for three reasons. The first reason is that the government emphasized the tainted evidence at trial. First, the evidence was emphasized by its place at trial. On the end of the second day, the government rested. Then, minutes later, with no explanation to the jury, the government reopened its case and recalled an FBI agent and had that FBI agent read verbatim paragraphs out of the tainted evidence. That signaled the evidence to the jury. Second, the next morning, in closing arguments, the government emphasized that same evidence, saying, quote, yesterday, at the end of the case, we read to you parts of the documents that say that each and every one of these banks was insured by the FDIC on the date it was robbed, end quote. This court in Alvarado-Valdez, in Toronto-Toronto, and in more cases since, has said that when the government emphasizes tainted evidence in closing argument, the government cannot show that its error was harmless. In Alvarado-Valdez, this court said... You mentioned the government reopened its case without explanation to the jury. Is that what you're saying? That's correct. Wasn't there a motion at the close of the evidence by the defendant to dismiss because the prosecution had not put on any evidence about the FDIC? That's correct, Your Honor. The point is that the jury was not informed as to why the evidence was reopened. In response to the motion, did the government offer up a response, separate and apart from the need to put in these additional documents, the additional evidence, in opposition to the motion? Yes, Your Honor. The government disagreed and said they believed that the evidence was more than sufficient. But in an abundance of caution, they moved to reopen the evidence. That was the way they phrased it. And so, in Alvarado-Valdez, I think it's significant that the court said, given the emphasis the government placed on the evidence in closing, there's no way to determine whether the jury would have convicted without that error. What if the fact is obvious? I'm sorry, Your Honor, I don't understand the question. Well, let me put it this way. Is there any major bank in the United States that's not FDIC-insured? There are, Your Honor, and I also think it would be incorrect for the court to take judicial notice of an essential element. I know that the government… Well, if you look at the First Circuit case from 2010, Iowa, it talks about the fact that basically every bank's FDIC-insured. You don't need to renew it. And they said in a 10-year period, only two banks in the entire country lost their FDIC status. Right, and so I would respond in a couple of ways. First is that in Iowa, the First Circuit explicitly noted that the Fifth Circuit would say the certificate is not sufficient, specifically citing Plattenberg, which I think is an important case for this issue. Then second, the First Circuit in Iowa did not rule on that basis. Although there is dicta about the FDIC and how it relates to banks, the court ultimately found that the testimony of a witness was sufficient that the jury could convict on that and they sidestepped the issue. But I would say that it would be improper when there's no evidence or argument presented in the district court for the court to take judicial notice of the FDIC. That's not what I'm saying. I'm saying there was some evidence. I think you acknowledge that. You're not moving… Well, there is some evidence you're saying it doesn't meet the harmless error standard. I mean, with Comerica, the teller says, we're FDIC-insured. I saw it posted in our bank. I understand your argument that there's a difference between sufficiency. The government has a much greater burden here on a harmless error. I understand that. But you… There's no evidence… Can you point to any evidence in the district court from the defense that indicated these banks weren't FDIC-insured? No, Your Honor, but I would respond that Mr. London did not bear any burden at trial. He chose to put the government to its burden. And I understand that, but we're now trying to figure out whether something was harmless. And the jury's always told it can rely on its common sense. So given that there was some evidence, I mean, this teller says, yeah, there's signs up there saying we're FDIC-insured. I think every person's common sense is major banks like Comerica are FDIC-insured. I mean, no one would put a dime in them if they weren't. Why can't that be considered? Not judicial notice, but just the law that the First Circuit cites, it says these banks pretty much have to be insured. Yes, Your Honor. And again, I would note that that law wasn't presented to the jury in this case. But I would respond by saying that it's, if this were a case of sufficiency, we would be having some different arguments. If the evidence was sufficient in this case, it was barely sufficient. Judge Costa, you noted teller Menjivar, her testimony as to the Comerica Bank. And I think that is remarkable and distinct from Fifth Circuit cases in two ways. One is that she is a bank teller. She's not a bank officer. So when the government cites to cases like Guerrero, Rangel, Slovacic, all of those involve bank officers. Sometimes it was an officer, vice president in Rangel, assistant vice president in Slovacic. Ms. Menjivar was simply a teller. She had no role in administration as far as was presented. She had no personal knowledge of FDIC status. The second is that in those cases cited by the government, there was no testimony to show the basis of knowledge. So it was permissible for the jury to infer they had firsthand knowledge. Here by contrast, Ms. Menjivar made clear where she knew this from. It was from seeing FDIC notices posted in the windows and at the tellers. She had simply seen it said FDIC. And that's where I think the Sixth Circuit's decision in Sandals is instructive that simply knowing that a bank holds itself out as FDIC insured is different than knowing that a bank is FDIC insured. Well, that's interesting to see where we're just getting away from common sense. Because I walk, I've never asked one of my banks, let me see your certificates. I walk in there at the teller window, it has that FDIC, it's like a gold-plated thing. I take it for granted then that they're FDIC insured. No one ever asked their bank for these documents. So why can't a jury equally say the teller says it's posted FDIC insured, we can conclude it's FDIC insured. Now, again, I know we're not in a sufficiency. Right, exactly. And I would say that there's two responses to that. The first is that it's the government's burden to prove it beyond reasonable doubt. But second, coming back to the harmlessness question. We would essentially have to be re-litigating the case on appeal. That's exactly what this court decided not to do in Alvarado Valdez, noting that there is no way to know what the jury based its verdict on, given that the government emphasized this evidence in closing. It is different than if we had just Ms. Menjivar's testimony standing alone. Could the government, or could the jury infer that that was proof? But instead, the government, in closing, emphasized, we read to you documents that say, on March 20th of 2014, and on March 24th of 2014, these three banks were insured. We know that's what the jury was told, and we know that is what the government asked them to rely on. And so there is no way the government can prove that its error was harmless because it was emphasized to the jury. But I would also point out that another reason the government cannot meet its burden is that the inadmissible evidence being admitted foreclosed at least two lines of argument that Mr. London could have presented to the jury. The first is, along the lines of what we're discussing, sufficiency. Mr. London, but for the inadmissible evidence, could have argued that the evidence did not show that at the time of the robberies, the banks were FDIC insured. The government admitted, without objection, three FDIC certificates. They were dated 1993, 1989, and 2007. They ranged from 7 to 25 years before the robberies. With just those certificates, and then Agent Katz interpreting those certificates, Mr. London could have argued that there was no evidence that 7 to 25 years later, those were still valid certificates. Once the affidavits and letter were admitted, he no longer could make that argument to the jury. And then second, Mr. London was not able to argue that the certificates insufficiently branches in Houston, Texas, were covered by the certificates. The three certificates were labeled Birmingham, Alabama, Laredo, Texas, and Dallas, Texas. But for the affidavits that said, I vouch that these banks in Houston are covered by the certificates, Mr. London could have argued to the jury that these are not proof that the Houston banks that were actually robbed were covered by the FDIC. And so given that, the government cannot show that its error was harmless. This court in Watkins, the Supreme Court in Fahey, have said that one step is the court needs to look at the effect of the error on the conduct of the defense. Here, Mr. London was barred from making two arguments he could have otherwise made to the jury. This was not harmless error. The government cannot prove it beyond a reasonable doubt. And so I want to come back just briefly to the Sandals decision from the Sixth Circuit because I think it is most squarely in line with our facts here. The first important fact is, as I noted, that there the court refused to take the testimony of a senior investigator who said for 23 years the bank has been FDIC insured. It refused to allow that to be sufficient, saying that simply knowing a bank holds itself out is not sufficient. Again, we're not on a sufficiency test here, but I think that's instructive. Second is that court addressed the affidavit issue, the confrontation issue, on plain error. That case was before the court, before the Supreme Court decided Melendez-Diaz and said explicitly affidavits are in the core class of testimonial statements. And on plain error, the Sixth Circuit reversed, saying we do not convict by affidavit. I think the law is clear after that, Melendez-Diaz in the Supreme Court and then Martinez-Rios in 2010 when this court adopted the same test. The government erred by admitting affidavits and by a letter. And then it cannot prove that it's harmless because it relied on those documents and foreclosed other arguments that Mr. London could have otherwise made. If the court has no further questions, I'll reserve the remaining time. What's the endgame here? I mean, if you win, I guess your client gets a new trolley, rolls the dice again, hopes the jury doesn't think he's the robber? Well, Your Honor, I think it's significant that the jury deliberated. Because you don't get, you don't get, it does go back for a new trial, unlike if you win insufficiency like in that Sixth Circuit case. Yes, that's correct. I believe we should receive a new trial in counts two through four. But I think it's significant that at trial, the jury deliberated for nearly six hours. About the five-hour mark, they asked for a magnifying glass. This was far from an open and shut, clear case. And so, yes, the endgame, the end result, what we're asking for is a new trial on counts two through four. Certainly, the government may change the evidence it uses to prove the FDIC element, but there are other contested issues that would be raised at trial as well. Counsel, what do you do with the escape from the halfway house? Well, we're not appealing that conviction, Your Honor. I know. So you'll let that stay with the district court?  You're not going to change your position? I'm sorry, Your Honor. You're not going to change your position on that issue? No, Your Honor. We believe the court should affirm on that count. All right. Let me add this. I wish every lawyer who came here spoke as well as you do. I heard every word you spoke. And incidentally, but this is premature, I was agreeing with you, but I haven't heard the other side, of course, but I heard every word, you were distinct, and you were right on the subject. You did a good job. Thank you. Thank you, Your Honor. And I'll reserve the remainder of my time. Thank you. Perfect time to sit down. Good morning, Your Honors. May it please the court, Jenny Bazel on behalf of the United States. Your Honors, as to the first argument, any errand admitting government's exhibits 18A, 23A, and 30A was harmless beyond a reasonable doubt. Absent those exhibits, the totality of the evidence had established that each bank was FDIC insured at the time of the robberies. Not only did the bank teller from Comerica testify that she knew the bank was currently FDIC insured and that it was posted at every teller line and every desk. There was also testimony from the FBI agent. Not just any FBI agent, Your Honors. He had six years' experience at the head of the Bank Robbery Task Force. He had investigated, his unit had investigated approximately 150 bank robberies a year. He testified that he was the one who obtained the certificates and those affidavits, and he also testified that each of the certificates... Counselor, I want to make sure I'm following your argument, because you're saying it's harmless error. Yes, Your Honor. But now you're talking about all the evidence that got admitted once the case was reopened. Isn't that what you're talking about now? I am to start out with, Your Honor. You're telling me how powerful it was and how harmless it was, all at the same time. I'm saying we had sufficient evidence before the Rule 29 motion, and then I'm going to get to why it was harmless that we reopened and put those certificates in, and why the jury didn't consider them. All right. But I would like, if it's okay with you, Your Honor, I'd like to start out with some of the evidence that wasn't highlighted already about why the jury could have already considered that they were FDIC-insured. So the agent had all this experience... I think there's some confusion. You're talking about before the case was reopened or after? I'm just saying that this is all the evidence the jury had to rely on, besides the certificates. Because in the prior discussion, only the bank teller's testimony was highlighted. And I believe that the agent's testimony was also very powerful, and maybe even more powerful than other cases this Court has considered. And I'd like to explain why. Isn't your big factual problem, though, that the trial prosecutor didn't think that, or they wouldn't have gone to the rather extraordinary step of asking to reopen the evidence? And that's pretty unusual. You only do that if you think you're in trouble. Yes, Your Honor. The defense had represented to the Court in his Rule 29 motion that the facts were identical to the Plattenberg case, in which the Court had reversed. The prosecutor said that they were not aware of that case. The Court was not aware of that case. So the prosecutor, in good faith, found these certificates that squarely addressed the issue he was raising. And the government does now concede that they also had testimonial information in them, and that they were improperly admitted. But in the moment, the government had five minutes to try and address this issue in which defense was claiming was squarely the same as Plattenberg. And I'm trying to show it was not the same as Plattenberg. And the error, if you would like me to skip to that part of the argument, the error was harmless because throughout the entire trial, the jury was never told to focus on FDIC. It was never talked about in Vordaer. It was never talked about in openings. The FBI agent was never crossed about his testimony. The teller was never crossed about her testimony. So the jury never heard the Rule 29 motion. They had no idea that the defense claimed we hadn't sufficiently proven the FDIC. And at the end of the Rule 29 motion, right before we reopened, the defense had, of course, objected to us entering the certificates, objected to us reopening, but, quote, he said, I don't think there's any reason for the jury to think that this is that big of a deal. That was immediately before the agent retook the stand. And that's what happened here, Your Honor. This was not a big deal. The agent came out, quickly went over those certificates, and they were almost never mentioned again. In closing, the prosecutor did briefly mention them in connection with all the other FDIC certificate information, but it was maybe a minute of the closing. Defense had the perfect opportunity at that time to say this element hasn't been proved. But instead they said, you need not even focus on whether a bank robbery has occurred. They conceded a bank robbery had occurred, which means they conceded the elements of bank robbery had been proven. They focused their entire closing on the identity of the bank robbery and the bank robber. And they told the jury not to waste any time thinking about whether a bank robbery had occurred, but to only focus on the identity of the bank robbery. Bank robber. I'm sorry. I keep saying bank robbery. Therefore, the jury, there's no reason to believe that the jury ever focused on anything about FDIC. But surely that these certificates were just a blip on the radar, and even defense conceded that there was no reason for them to think it was a big deal. But you have the burden on harmless here. I mean, as you can tell from my questions to the other side, I don't know that our law, our case law makes a lot of sense because every bank's FDIC insured, but the case law is what it is. And it seems to me under that case law, even on sufficiency review, this would be a close call. So then how do you prove, meet your burden of showing it was harmless error? I think it's a close call under Plattenberg, even if this were just sufficiency. And that's what I was starting out with, Your Honor. I didn't finish, but the agent testified who had experience in hundreds of robberies, that he would not have jurisdiction in any of these three robberies if the bank was not FDIC insured. And so therefore, in his investigation, he had determined that they were FDIC insured. I feel that that is much stronger than the case law this court has considered. For example, although in Manor, it was a bank employee, he was not even sure if the bank was FDIC insured, and the court still upheld it because he had seen stickers. So I feel that as far as the sufficiency, we had the sufficiency at the time of the Rule 29 motion. As far as the harmless error, the fact that these certificates were just merely a blip on the radar is why it's harmless error. The other reason it's harmless error, Your Honor, is because again, FDIC was just not an issue. The FBI agent was never cross-examined about FDIC. The bank teller was not cross-examined about FDIC. There was no mention of FDIC in openings or in the defense's closings. But I just have a hard time seeing it as a blip on the radar. I mean, the trial's over. I take it the jury wasn't in the courtroom when the government moved to reopen. So the jury comes back in. It's not a blip on the radar when they think everything's done, and then all of a sudden the judge says, no, by the way, we're going to start this thing over again. I mean, that's a significant, unusual event in a trial. How is that a blip on the radar? How could the jury not have focused on something that is essentially part two of the trial? I don't think there's any reason to believe that jurors have experience with how things should go, and they were merely just told, Agent Katz is going to talk about one quick thing. I think anyone who watches any, I mean, people know what it means when a party rests and the case is over, and then you come back and it starts over again. Well, even defense conceded right before the jury came back, Your Honor, that there was no reason for the jury to think it was a big deal. The government, of course, feels that way, but defense also agreed there was no reason for the jury to think it was a big deal, and that's from the record at page 839. The second argument, Your Honors, is foreclosed, that bank robbery is a crime of violence. The defense concedes that it is foreclosed, and if the court has no further questions, I rest on the government's briefs. All right. Thank you, Counsel. Thank you. Rebuttal. I want to return to the government's position that Plattenberg is not the same as this case, and I would agree that was a sufficiency case. The Fifth Circuit dismissed a case on sufficiency grounds, and so when the government here points to the totality of the evidence, it is applying the wrong standard. Under Harriman v. Estelle and Alvarado-Valdez, it's clear that is not the standard to be applied in this situation. Second, the government makes much of the jury not hearing Mr. London's claim that the FDIC element had not been proven. It would be improper for Mr. London, in closing argument, to argue that the district court had erred in admitting that evidence. He did not make that argument. It also would have been erroneous for him to say that the evidence was not sufficient given that evidence that had been put into the record. So he was not able to make that argument because of the error the government committed. Then, I will note that the defense did not concede that it is no big deal to reopen the evidence. That quote comes some 20 pages after the motion for a judgment of acquittal and strenuous defense objections to reopening. Once it was reopened, that sentence was uttered in the context of how to present the evidence over the defense objection. The defense was arguing that it should be simply admitting a document. There was no reason to bring in an agent and have him read from it to keep it from being a big deal. But the government called the agent and had him read from those documents. It was not a defense concession that reopening would be no big deal. And then last, the Manor case that the government mentioned, there's reason that that's different. First is that it was a bank manager, not a bank teller. Second, it wasn't just seeing stickers in that case. The bank manager testified to seeing the actual FDIC certificate and comparing it to what was in the windows. So I would come back to saying that the government simply cannot meet its burden, and this court should reverse and remand for a new trial on counts two through four. Counsel, just as a matter of form, shall we say to the district court that the appeal was taken from the conviction for escape from the halfway cast and may be considered in the sentencing, if any? Your Honor, I think the court should affirm on count one and send back just counts two through four. Although the government wrote a footnote about reversing all four, this court has previously found that it's insufficiently brief to simply put something in a footnote. All right. Thank you. All right. Thank you, counsel. Thank you. The court will take this matter under review.